475 So.2d 671 (1985)
STATE of Florida, Petitioner,
v.
Jimmie RAMSEY, Respondent.
No. 64776.
Supreme Court of Florida.
July 11, 1985.
Rehearing Denied October 7, 1985.
Jim Smith, Atty. Gen. and W. Brian Bayly, Asst. Atty. Gen., Daytona Beach, for petitioner.
James B. Gibson, Public Defender and Larry B. Henderson, Asst. Public Defender, Daytona Beach, for respondent.
ADKINS, Justice.
We have for review Ramsey v. State, 442 So.2d 303 (Fla. 5th DCA 1983), which expressly and directly conflicts with State v. Akers, 367 So.2d 700 (Fla. 2d DCA 1979). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const.
Ramsey was stopped for several traffic infractions. While making a routine computer check, the deputy learned of two outstanding capiases against Ramsey. He then informed Ramsey of the capiases, placed him under arrest, and instructed him to put his hands on the trunk of the patrol car. Ramsey then turned around and said, "No way", and ran from the scene. Ramsey had not been restrained and the arrest procedure had not progressed to the point where the deputy had removed his handcuffs from their carrying place.
*672 Ramsey was charged with escape in violation of section 944.40, Florida Statutes (1981). That statute provides:
Any prisoner confined in any prison, jail, road camp, or other penal institution, state, county, or municipal, working upon the public roads, or being transported to or from a place of confinement who escapes or attempts to escape from such confinement shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084. The punishment of imprisonment imposed under this section shall run consecutive to any former sentence imposed upon any prisoner.
"Prisoner" is defined in section 944.02(5), Florida Statutes (1981), as follows:
"Prisoner" means any person who is under arrest and in the lawful custody of any law enforcement official, or any person convicted and sentenced by any court and committed to any municipal or county jail or state prison, prison farm, or penitentiary, or to the custody of the department, as provided by law.
On appeal from Ramsey's judgment and sentence, the district court of appeal reversed. It concluded that the legislature did not, by this statute, intend to punish the conduct of fleeing from an arresting officer. "Instead, it required that the escape, in order to come within the confines of the statute, occur while the prisoner is being transported." 442 So.2d at 304.
The Fifth District did not discuss the issue of when "transportation" of the prisoner begins, but held that it is an issue to be determined by the jury. Id. In the instant case, however, the court held that since the undisputed facts showed that Ramsey had not been handcuffed, had not been placed in the police car and the officer had not announced that he was taking him to jail, transportation of the prisoner had not yet begun.
In State v. Akers the facts were the same except Akers had been handcuffed while Ramsey had not. The Akers court did not discuss the issue of whether transportation had begun. Instead, the court held:
Construing the statutes [§§ 944.40 and 944.02(5), Fla. Stat. (1977)], in pari materia, we conclude that the legislature intended that any person under arrest and in the lawful custody of a law enforcement official who escapes while being transported to or from a place of confinement shall be guilty of a felony.
... For conviction under the escape statute, the state need show only (1) the right to legal custody and (2) a conscious and intentional act of the defendant in leaving the established area of such custody. Watford v. State, 353 So.2d 1263 (Fla. 1st DCA 1978).
367 So.2d at 702.
We approve the Akers decision. This rationale eliminates some difficult questions concerning when transportation begins. As stated by Judge Orfinger in his special concurrence in State v. Iafornaro, 447 So.2d 961 (Fla. 5th DCA 1984):
Since a suspect does not become a "prisoner" until he is placed under arrest, and since he cannot be transported to a place of confinement until he becomes a prisoner, unless the facts clearly show that the officer had no intention of taking him from the scene, "transportation to a place of confinement" begins at the time the suspect is placed under arrest, because that is the very first step in the process. Even though not yet physically restrained, one who has been placed under arrest has had his liberty restrained in that he is not free to leave. His confinement has thus begun and if he escapes from lawful custody, the fact that he may be properly charged with resisting arrest does not affect the result, because oftentimes a single act violates two or more criminal statutes.
Thus a literal interpretation of the words of the statute itself leads to the conclusion that one who meets the definition of prisoner is being transported to a place of confinement at the point in time when he becomes a prisoner.
*673 The case of Johnson v. State, 357 So.2d 203 (Fla. 1st DCA), cert. denied, 362 So.2d 1054 (Fla. 1978), is analogous to the instant case. The defendant in Johnson was already confined in a county jail but became ill inside the jail. He was escorted to the hospital where he subsequently escaped.
After a trial on the charge of escape in violation of section 944.40, Florida Statutes (1975), the defendant in Johnson claimed that there was a variance between the proof and the allegations in that the proof did not show that the defendant escaped while confined in a county jail. The First District rejected the argument of defendant as follows:
We do not believe that the term "confinement" is narrowly limited to the actual physical presence in the jail. Appellant had been committed to the jail and was in the lawful custody of the jail.
357 So.2d at 204. Likewise, in the instant case, the terms "transported to or from a place of confinement" should not be so narrowly construed as to vitiate the intent of the statute.
However, even were we not to conclude that the words of the statute lend themselves to this interpretation, we would reach the same conclusion based on the purpose of the legislature in enacting this law. The intent of the legislature in enacting this statute was obviously to prevent lawfully arrested prisoners from escaping the custody of the arresting officer. The intent of the legislature is controlling over the literal interpretation of the words of the statute.
A statute should be construed and applied so as to fairly and liberally accomplish the official purpose for which it was adopted even if the results seem contradictory to ordinary rules of construction and the strict wording of the statute... . And the manifest intent of the legislature will prevail over any literal import of words used by it; and no literal interpretation leading to an unreasonable conclusion or a purpose not intended by the law should be given.
George v. State, 203 So.2d 173, 175-76 (Fla. 2d DCA 1967).
In conclusion, we quash the decision of the Fifth District Court of Appeal in this case, and remand for proceedings consistent with this opinion.
It is so ordered.
OVERTON, ALDERMAN, McDONALD, EHRLICH and SHAW, JJ., concur.
BOYD, C.J., dissents with an opinion.
BOYD, Chief Justice, dissenting.
The majority holds that a suspect who is the subject of an attempted arrest but is not effectively taken into custody and confined, who successfully resists arrest in that he evades and eludes the arresting officer by departing the scene before custody and confinement are effectuated, can be found guilty of escape. I must dissent because this holding is in clear contravention of the plain language of the escape statute and is therefore erroneous.
The district court of appeal correctly analysed the situation and the statutes as follows:
If section 944.40 were intended to encompass situations such as the one before us, then the legislature would have provided in the statute that any prisoner who escapes from lawful arrest is guilty of escape. This it did not do. Instead, it required that the escape, in order to come within the confines of the statute, occur while the prisoner is being transported. It follows then that the legislature intended to punish conduct other than fleeing from the custody of an arresting officer. Interpreting the statute in this way, the question as to when the "transportation" of a prisoner begins becomes an important one and is normally a factual issue to be determined by the jury. Here, however, the facts were not in dispute. Ramsey had not been handcuffed, had not been placed in the police car and the officer had not announced that he was taking him to jail. As a result, transportation of the prisoner had not yet begun.
*674 442 So.2d at 304-05. An essential element of the crime of escape is the fact of lawful custody or confinement; the mere right to custody is not enough. See, e.g., Sullivan v. State, 430 So.2d 519 (Fla. 2d DCA 1983); Williamson v. State, 388 So.2d 1345 (Fla. 3d DCA 1980).
I believe the conduct shown by the facts of this case was obviously intended by the legislature to be punished as the offense of resisting an officer under section 843.02, Florida Statutes (1981). See M.C. v. State, 450 So.2d 336 (Fla. 5th DCA 1984). It is an error to allow that conduct to be punished as the more serious offense of escape.
I believe that under the facts of this case, there arises an ambiguity in the language of the escape statute. The ambiguity calls for judicial construction. It is well established that criminal statutes requiring judicial construction must be strictly construed against the state and in favor of the accused person.
Because the facts shown by the evidence established the crime of resisting an officer without violence, and because the facts alleged in the charging document were sufficient to notify the defendant that conviction on that charge was possible, I would remand for the entry of judgment finding him guilty of that less serious offense.