582 So.2d 57 (1991)
In the Interest of K.A.N., a Child, Appellant,
v.
STATE of Florida, Appellee.
No. 90-3539.
District Court of Appeal of Florida, First District.
June 14, 1991.
*58 Nancy Daniels, Public Defender, and Nancy L. Showalter, Asst. Public Defender, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen., and Gypsy Bailey, Asst. Atty. Gen., Tallahassee, for appellee.
ZEHMER, Judge.
K.A.N. appeals an adjudication of delinquency for escaping from a detention facility in violation of section 39.061, Florida Statutes (Supp. 1990). Raising two points on appeal, he contends (1) that the evidence was legally insufficient to sustain the finding of guilt under section 39.061, and (2) that section 39.061 is unconstitutional in that it violates the separation of powers clause of the Florida constitution as an invalid delegation of legislative power to the Department of Health and Rehabilitative Services, and it violates the due process clauses of the federal and Florida constitutions in that it is too vague and lacking in certainty of meaning to meet constitutional requirements. As we reverse on the first point, it is unnecessary to reach the second.
On October 16, 1990, the state charged appellant in one count with escaping from Duval House, a juvenile residential detention facility, on October 5, 1990.[1] At trial, the state presented evidence setting forth a brief description of the residential program at Duval House and establishing that K.A.N. attended a football game with a group from the facility as part of the rehabilitative program, and that K.A.N. left during the game and did not return to Duval House until the following day. The trial court denied appellant's motion for a judgment of acquittal and adjudicated him guilty of escape. K.A.N. contends that the state failed to prove that the residential program that he left fell within restrictiveness level VI or higher as required by the statute, and thus failed to prove all the essential statutory elements of the offense. The state counters that appellant's motion for judgment of acquittal was not predicated upon this precise argument and is thus not properly preserved for appellate review. The state does not discuss the sufficiency of the evidence to prove that this program fell within the restrictiveness level VI category.
We do not agree with the state that appellant's motion for judgment of acquittal and argument presented thereon *59 did not preserve this argument for appellate review. The grounds of the motion alleged that the state failed to prove all elements of the offense charged. While counsel's argument as transcribed in the record is rather inarticulate and somewhat confusing, the sense of what was being urged is, we feel, sufficiently broad to cover the argument now being made. In particular, appellant's counsel commented on the lack of rules and judicial notice thereof. But even if that were not so, nevertheless we would be compelled to consider this argument under the doctrine of fundamental error. The courts of this state have consistently held that a conviction in the absence of a prima facie showing of the crime charged is fundamental error that may be addressed by the appellate court even though not urged below. See Troedel v. State, 462 So.2d 392, 399 (Fla. 1984); Dydek v. State, 400 So.2d 1255, 1258 (Fla. 2d DCA 1981); Johnson v. State, 574 So.2d 222, 224 (Fla. 5th DCA 1991).
Section 39.061 provides:
An escape from any secure detention or any residential commitment facility of restrictiveness level VI or above maintained for the treatment or rehabilitation of children found to have committed delinquent acts or violations of law constitutes escape within the intent and meaning of s. 944.40 and is a felony of the third degree.[2]
Section 39.01(61) defines "restrictiveness level" as:
the identification of broad custody categories for committed children including nonresidential, residential, and secure residential. Specific placement in restrictiveness levels within these categories depends upon the risk and needs of the individual child. Restrictiveness levels must be established by the department by rule, provided however, that there shall be no more than eight levels.
HRS promulgated emergency rule 10MER90-32, effective September 28, 1990, in which it defined restrictiveness levels for committed youths, and this rule was published in the Florida Administrative Weekly five days after K.A.N. committed the charged offense on October 5, 1990. 16 Fla. Admin. Weekly 4800 (October 12, 1990). Paragraphs 3 and 4 of the emergency rule define four restrictiveness levels and classify them as follows: (a) Restrictiveness Level 2  "Non-Residential"; (b) Restrictiveness Level 4  "Low Risk Residential"; (c) Restrictiveness Level 6  "Moderate Risk Residential"; (d) Restrictiveness Level 8  "High Risk Residential." The requirement of 24-hour awake supervision with a structured residential environment is the critical factor distinguishing the categories in levels 6 and 8 from those in levels 2 and 4.
Generally, to carry its burden of proving escape, the state must show: (1) its right to legal custody of the defendant and (2) a conscious and intentional act of the defendant in leaving the established area of such custody. State v. Ramsey, 475 So.2d 671 (Fla. 1985); Lewis v. State, 318 So.2d 529 (Fla. 2d DCA 1975), cert. denied, 334 So.2d 608 (Fla. 1976). The crucial issue in this case is whether the state presented sufficient evidence to show that K.A.N. escaped from "lawful custody," defined in section 39.061 as confinement in "any secure detention or any residential commitment facility of restrictiveness level VI or above." From a cursory review of the applicable statutes and rules cited above, it is readily apparent that not all categories of residential programs are intended to qualify as the type of "custody" that will support a charge of escape under the newly enacted statute, that the levels of restrictiveness that support a charge of escape can only be established by reference to the department's duly enacted rules, and that whether a particular type of residential program supports such a charge will depend on the proof adduced at trial showing *60 the level of restrictiveness governing the program from which the defendant made an unauthorized departure.
The state presented the following evidence through two witnesses at trial. Andrew Sneed, a group counselor at Duval House, testified that children "are placed there in custody when they are adjudicated by H.R.S. then they are brought to our facility. When they are there they take part in the rehabilitation programs and the other social programs that we have there." On the day in question, appellant was a member of a group who "after they have been committed to our facility in the half way house we run them [sic] through the rehabilitation programs and our goal is to try to work them back into society." The group was attending a football game at which they were allowed to walk around the facilities at different times for ten minute breaks. When appellant and two other individuals failed to return from the fourth break, Sneed and the others looked for them for about an hour. Then they returned to the house and reported that appellant and the others had escaped from the facility. Appellant returned to the house the next morning.
Crystal Clark, a court liaison officer with HRS, testified that the length of stay at Duval House when an individual is "committed" was six months. She also testified that "[e]ach half-way house as far as the length of time that is necessary for rehabilitation  at all half-way house[s] it is six months." When asked how she knew about the length of stay for half-way houses, she stated, "[b]ecause, the Department tells us how the programs are categorized for the length of rehabilitation that is necessary."
At trial, the state presented no evidence as to any HRS rule defining "any secure detention or any residential commitment facility of restrictiveness level VI or above" as specified in section 39.01(61), or that Duval House is that type of facility. The only thing the state proved at trial was that Duval house was a "half-way" house or "rehabilitation" facility at which juveniles are usually "committed for six months." The state failed to bring the emergency rule defining restrictiveness levels to the attention of the trial judge and failed to ask that the rule be judicially noticed. Appellant was not shown on this record to have notice or knowledge, when he left the football game, that his leaving and staying away from Duval House overnight would constitute the felony offense of "escape." Indeed, the Department acknowledges that the principal reason for enacting the emergency rule was that:
Current rules [Chapter 39] do not address specific standards related to restrictiveness levels of all delinquency commitment programs... .
* * * * * *
Amendments to Chapter 39 also included a provision that a child can only be charged with escape if the escape occurs from a restrictiveness level six or higher program. In the absence of this rule being promulgated at this time, a youth cannot be charged with escape as provided by law.

(Emphasis added.) There was no showing that K.A.N. was subject to 24-hour awake supervision with a structured environment. In sum, there was simply no effort by the state to prove that K.A.N. was being held in a form of custody that met restrictiveness level 6 or above. The total lack of evidence on this critical element of escape under the newly enacted statute no doubt accounts for the state's failure to discuss the sufficiency of the evidence on this element.
The order adjudicating K.A.N. a delinquent for violating section 39.061 is reversed and the cause remanded with directions to dismiss the charge.
REVERSED AND REMANDED.
MINER, J., concurs.
ERVIN, J., concurs in result.
NOTES
[1] The state initially charged appellant with violation of section 39.112, Florida Statutes, but orally amended the petition to charge violation of section 39.061, Florida Statutes (Supp. 1990), the new juvenile escape statute. Section 39.112 was repealed, effective October 1, 1990, when section 39.061 became effective. See Ch. 90-208, §§ 5 and 17, Laws of Fla.
[2] Section 944.40, Florida Statutes (1989), provides:

Any prisoner confined in any prison, jail, road camp, or other penal institution, state, county, or municipal, working upon public roads, or being transported to or from a placement of confinement who escapes or attempts to escape from such confinement shall be guilty of a felony of the second degree . ..