**STATE OF HAWAII**, Plaintiff–Appellee, v. **RANDALL KU NAKOA**, Defendant–Appellant

NO. 14808

(CR. NO. 90–003K)

SEPTEMBER 20, 1991

LUM, C.J., PADGETT, HAYASHI, WAKATSUKI, AND MOON, JJ.

## OPINION OF THE COURT BY MOON, J.

Defendant–appellant Randall Ku Nakoa (Nakoa) appeals from his conviction of escape in the second degree, a violation of Hawaii Revised Statutes (HRS) § 710–1021(1). Nakoa contends that: 1) the evidence presented at trial failed to establish that he was in custody when he fled from the police; 2) the trial court erred when it gave certain jury instructions which invited jury confusion; and 3) he was denied his right to a fair trial because the prosecutor stated her personal opinion as to the credibility of the two police officers who testified against him. Upon review, we find no error and affirm the conviction.

## I.

On January 4, 1990, Officers Mark Farias and Michael Moniz of the Hawaii County Police Department were assigned to patrol parks in the Kailua–Kona area on the island of Hawaii as part of a

plainclothes Crime Reduction Unit. This unit was trained to focus on liquor, drug, truancy, and curfew violations at the beaches and parks in the Kona and South Kohala districts.

At approximately 10:15 p.m. on January 4, Farias and Moniz observed an adult male, who was later identified as defendant Nakoa, drinking from a can of beer in the Hale Halewai County Park. The officers parked their vehicle and approached Nakoa and another male who was also present. Both officers unclipped their police badges from their belts, showed the badges to Nakoa, and identified themselves as police officers. Farias then advised Nakoa that he was under arrest for drinking on public premises. Both Farias and Moniz testified that Nakoa responded by stating "yeah, yeah" and then handed Farias the can of beer, which Farias placed on a park bench.

Officer Farias testified that he placed his right hand on Nakoa's back, turned Nakoa around, and pushed him toward a stone wall, which was approximately three feet away. He then instructed Nakoa to put his hands on the stone wall. Nakoa complied by placing his hands on the wall and spreading his legs. Keeping his right hand on Nakoa's back, Farias reached for his handcuffs with his left hand. A few seconds later, before Farias was able to place the handcuffs on Nakoa, Nakoa jumped over the stone wall and ran across the street. Farias gave chase across a parking lot and caught up with Nakoa as he tried to jump over another wall. Farias grabbed Nakoa and both men fell onto a parked car. Farias held Nakoa on the car until Officer Moniz, who was unable to give chase due to a prior knee injury, crossed the street to assist. Nakoa did not resist at first, but shortly thereafter attempted to get away. Nakoa continued to struggle until both officers were able to subdue him.

Nakoa was charged with drinking without a permit, a violation of Hawaii County Code §§ 14–1 and 14–2, and escape in the second degree, a violation of HRS § 710–1021(1). Nakoa filed a

motion to dismiss the escape charge for insufficient evidence, which was denied by the trial court. Nakoa subsequently entered a guilty plea to the drinking charge.

On June 6, and 7, 1990, a jury trial was held on the escape charge. After the State's opening statement on June 7, Nakoa moved for judgment of acquittal, which was denied. On the same day, after the State rested its case, Nakoa made a second motion for judgment of acquittal. After hearing argument, the second motion was also denied. The defense then rested without presenting any witnesses. The jury subsequently found Nakoa guilty of escape in the second degree and this appeal followed.

## II.
### A.

Nakoa's first argument on appeal is that the trial court erred in denying his second motion for judgment of acquittal of escape in the second degree based on the insufficiency of evidence. In passing on a motion for a judgment of acquittal, the trial court must determine, upon the evidence viewed in the light most favorable to the State and in full recognition of the province of the jury, whether a reasonable mind might fairly conclude guilt beyond a reasonable doubt. *State v. Bailey*, 65 Haw. 129, 648 P.2d 192 (1982).

The escape statute, HRS § 710–1021, provides in pertinent part: "(1) A person commits the offense of escape in the second degree if he intentionally escapes . . . *from custody*." (Emphasis added.) "Custody," as defined in HRS § 710–1000(3), means "restraint by a public servant *pursuant to arrest*, detention, or order of a court." (Emphasis added.) HRS § 803–6(a) defines "arrest" as (emphasis added):

> At or before the time of making an arrest, the person shall declare that the person is an officer of justice, if such is the case. If the person has a warrant the person should

show it; or if the person makes the arrest without warrant in any of the cases in which it is authorized by law, the person should give the party arrested clearly to understand for what cause the person undertakes to make the arrest, and *shall require the party arrested to submit and be taken to the police station or judge.* This done, the arrest is complete.

Nakoa contends that the evidence, even when viewed in the light most favorable to the State, failed to establish that he was in "custody," that is, restrained pursuant to arrest under HRS § 803–6(a), which is required to prove the offense of escape in the second degree. Nakoa argues that the officers "intended to arrest him" for drinking in public, but that before Officer Farias could "complete the arrest by placing [him] up against a wall and handcuffing him, . . . [he] bolted without ever submitting to the control of the officer." Alternatively, he argues that even if he did submit to the officer's control for a "few seconds, the process of transporting him to the police station or judge had not yet begun." In *State v. Ryan*, 62 Haw. 99, 612 P.2d 102 (1980), this court rejected the defendant's argument that arrest under HRS § 803–6(a) was not completed until he was taken to the police station. We stated:

> The phrase "and be taken to the police station" merely indicates the purpose for which the defendant is being required to submit to the custody and control of the arresting officer. And once the defendant has submitted to the control of the officer *and* the process of taking him to the police station or to a judge has commenced, his arrest is complete, and he is in "custody," for the purposes of the escape statute.

*Id.* at 101, 612 P.2d at 103 (emphasis in original).

Under facts similar to this case, the Supreme Court of Florida, in *State v. Ramsey*, 475 So. 2d 671 (Fla. 1985), held that for a conviction under the Florida escape statute, the state need only show a

right to legal custody and a conscious and intentional act of the defendant to leave the established area of such custody. Defendant Ramsey was stopped for several traffic infractions and while making a routine computer check, the deputy learned of two outstanding writs against him. The deputy informed Ramsey of the writs, placed him under arrest, and instructed him to put his hands on the trunk of the patrol car. Ramsey turned around and said, "[n]o way," and ran from the scene. He was charged with escape. The Florida escape statute provided, in part, that "[a]ny prisoner . . . being transported to or from a place of confinement who escapes or attempts to escape from such confinement shall be guilty of a felony in the second degree . . . ." *Id.* at 672. The term "prisoner," as defined in the Florida statute, means "any person who is under arrest and in the lawful custody of any law enforcement official . . . ." *Id.* at 672.

Ramsey was subsequently convicted of escape. However, on appeal, the Florida District Court of Appeal reversed, concluding that Florida's escape statute required that the escape occur while the prisoner was being transported. The district court of appeal held that "since the undisputed facts showed that Ramsey had not been handcuffed, had not been placed in the police car and the officer had not announced that he was taking him to jail, transportation of the prisoner had not yet begun." *Id.* at 672.

Notwithstanding the district court of appeal's finding that Ramsey had not been physically restrained, that is, handcuffed, and that the deputy had not actually commenced transporting him to jail, the Florida Supreme Court, on review, reversed the decision of the district court of appeal. The Florida Supreme Court, in holding that transporting a suspect begins at the time of arrest, stated (emphasis added):

> Since a suspect does not become a "prisoner" until he is
> placed under arrest, and since he cannot be transported to
> a place of confinement until he becomes a prisoner . . .

"transportation to a place of confinement" *begins at the time the suspect is placed under arrest, because that is the very first step in the process. Even though not yet physically restrained, one who has been placed under arrest has had his liberty restrained in that he is not free to leave.* His confinement has thus begun and if he escapes from lawful custody, he may be properly charged with escape.

*Ramsey*, 475 So. 2d at 672 (quoting *State v. Iafornaro*, 447 So. 2d 961 (Fla. 5th Dist. Ct. App. 1984) (concurring opinion by Orfinger, J.)).

The evidence in this case indicates that Nakoa, like Ramsey, had not been physically restrained with handcuffs nor had he been placed in the police vehicle. However, before Nakoa fled, Farias advised him that he was under arrest for drinking on public premises. Nakoa responded by stating "yeah, yeah" and handed the can of beer to Farias. Nakoa complied when instructed to place his hands on the stone wall, and also spread his legs, while Farias kept his right hand on Nakoa's back and attempted to handcuff him with his other hand. Clearly, this evidence indicates that Nakoa had submitted to the control of Officer Farias. Moreover, we agree with the rationale of the court in *Ramsey* and conclude that although he had not been physically restrained, that is, handcuffed, Nakoa, who had been placed under arrest, had had his liberty restrained in that he was not free to leave. At that point, the first step in the process of transporting him to the police station had begun. Therefore, Nakoa's arrest was complete and he was in custody for purposes of the escape statute.

Nakoa also argues that "[t]his is a classic case of overcharging by the Prosecutor's Office," apparently referring to the fact that Nakoa was charged with the felony of escape versus the misdemeanor offense of resisting arrest. The resisting arrest statute, HRS § 710–1026, states in pertinent part:

(1) A person commits the offense of resisting arrest if he intentionally prevents a peace officer acting under color of his official authority from effecting an arrest by: (a) Using or threatening to use physical force against the peace officer or another; or (b) Using any other means creating a substantial risk of causing bodily injury to the peace officer or another.

Nakoa contends that "the commentary to HRS § 710–1026 Resisting Arrest, which is in *pari materia* with the escape statute, is right on point and supports [his] position." The commentary states, in pertinent part:

Mere non–submission ought not to be an offense. One who runs away from an arresting officer or who makes an effort to shake off the officer's detaining arm might be said to obstruct the officer physically, but this type of evasion or minor scuffling is not unusual in an arrest, nor would it be desirable to make it a criminal offense to flee arrest. In this case the proper social course is to authorize police pursuit and use of reasonable force to effect the arrest. If the actor is captured, he may be convicted of the underlying offense.

Both the State and Nakoa agree that the escape and resisting arrest statutes are in *pari materia* and must be strictly construed with reference to each other. *See Coray v. Ariyoshi*, 54 Haw. 254, 506 P.2d 13 (1973) (laws in *pari materia* will be construed with reference to each other). However, as noted by the State, the commentaries to the penal code, published pursuant to HRS § 701–105, "may be used as an aid in understanding the provisions of [the penal code], but not as evidence of legislative intent."

Nakoa asserts that charging him with resisting arrest would have been more appropriate because the facts did not support the second degree escape charge but "may arguably have been sufficient to justify a misdemeanor charge of resisting arrest."

However, resisting arrest relates to a person who has not submitted to the custody and control of the arresting officer and who intentionally acts to prevent the officer from effecting an arrest. The escape statute requires that the arrest be completed before the defendant is deemed to be in custody. *See State v. Ryan*, 62 Haw. 99, 612 P.2d 102 (1980). As previously discussed, Nakoa's arrest was complete and he was in custody before he fled from the police. Thus, the resisting arrest statute is inapplicable under the circumstances of this case.

Based on the foregoing, we hold that there was sufficient evidence to support the jury's verdict in this case.

### B.

Nakoa, in his second point of appeal, contends that the trial court erred in giving certain instructions, which invited jury confusion. Erroneous jury instructions are presumptively harmful and are a ground for reversal unless it affirmatively appears from the record as a whole that the error was not prejudicial. *State v. Pinero*, 70 Haw. 509, 778 P.2d 704 (1989). Our standard for reviewing jury instructions is whether the instructions, when considered as a whole, are prejudicially insufficient, erroneous, inconsistent, or misleading. *State v. Villeza*, 72 Haw. 327, 817 P.2d 1054 (1991).

Nakoa agrees that the court correctly allowed State's Requested Jury Instruction No. 11, which defined custody for purposes of the escape statute according to *Ryan*. That instruction, given by agreement, reads as follows:

> A person need not be booked or charged with a crime before he can be found guilty of escape from custody.
>
> The phrase "and be taken to the police station" merely indicates the purpose for which the defendant is

> being required to submit to the custody and control of the arresting officer.
>
> Once the defendant has submitted to the control of the arresting officer and the process of taking him to the police station or to a judge has commenced, his arrest is complete and he is in "custody" for purposes of the escape statute.

Nakoa contends that the effect of Instruction No. 11 was "essentially nullified by the trial court when it invited jury confusion by also giving State's Jury Instruction Nos. 8 and 10, which were incorrect." Instruction No. 8, as modified, gave the statutory definition of "custody" found in HRS § 701–1000(3), and stated: "Under our law 'custody' means restraint by a public servant pursuant to arrest or detention. Instruction No. 10, which defined "arrest" as found in HRS § 803–6(a), read as follows:

> At or before the time of making an arrest, the person shall declare that the person is an officer of justice, give the party arrested a clear understanding for the reason for the arrest, and shall require the party arrested to submit and be taken to the police station or judge. When done, the arrest is complete.

Nakoa argues that Instruction Nos. 8 and 10, given over his objection, presented conflicting definitions of "custody" and "arrest," when compared with Instruction No. 11. Nakoa submits that Instruction No. 11 "would have been sufficient in itself and would have avoided any possibility of the jury being confused[.]" We disagree.

In *Ryan*, this court relied upon the statutory definitions of "custody," HRS § 710–1000(3), and "arrest," HRS § 803–6(a), to clarify the definition of custody for purposes of the escape statute. We stated that "[t]he only question for our determination is, whether the defendant was then under 'arrest' within the meaning of HRS § 710–1021 [escape statute] and HRS § 710–1000(3),"

and agreed with defendant Ryan that "the arrest for escape purposes must have been made in full compliance with HRS § 803–6." *Ryan*, 62 Haw. at 100, 612 P.2d at 102–03.

Here, Instruction Nos. 8 and 10 served to clarify Instruction No. 11, which defined custody for purposes of the escape statute. Additionally, Instruction No. 11 interpreted the phrase "and be taken to the police station," which was given in Instruction No. 10, and also referred to the term "custody," which was defined in Instruction No. 8.[1]  All three instructions supplemented, rather than contradicted, each other, and aided the jury in understanding the law applicable to the charge of escape in the second degree. Thus, we find that the trial court did not err in giving Instruction Nos. 8 and 10.

## C.

Nakoa's final contention on appeal is that the prosecutor deprived him of his right to a fair trial by improperly stating her personal beliefs as to the credibility of the police witnesses against him during rebuttal argument.  Because defense counsel did not object to the prosecutor's remarks when made, it must be determined whether the remarks constituted plain error, which affected Nakoa's substantial rights. *See* HAWAII RULES OF PENAL PROCEDURE 52(b); *State v. Vaitogi*, 59 Haw. 592, 585 P.2d 1259 (1978).

In response to defense counsel's attack on the credibility of the two officers during his closing argument, the prosecutor stated in rebuttal:

> Consider the two officers that came before you. Officer Farias appears to be the more softspoken of the

---

[1] We also note that the term "custody" is found in Instruction No. 7, which defined the offense of escape as an intentional escape "from custody."

two and to him that yeah, yeah was rough. Officer Moniz, who does not appear to be as softspoken, to him it was cooperative and those kinds of inconsistencies should not lead to an attack on their credibility which is another very common tactic exercised by the defense in criminal defense work, that is, rather than placing the Defendant on trial, let's place the witnesses on trial.

You have heard their testimony and *I think* that based on their demeanor in the courtroom, on your common sense, on your knowledge of human nature, and your experience that *the police officers who testified are trying their best to be as accurate as they could in their recollection of the incident that occurred.*

(Emphasis added.)

We have held that prosecutors are bound to refrain from expressing their personal views as to a defendant's guilt or the credibility of witnesses. *State v. Marsh*, 68 Haw. 659, 660, 728 P.2d 1301, 1302 (1986). However, the prosecutor in this case, unlike the prosecutor in *Marsh*, did not repeatedly express her personal opinion regarding Nakoa's guilt or the credibility of the police officers. The prosecutor's remarks in this case, when taken in context, requested that the jurors rely on their own observations, common sense, knowledge of human behavior, and experiences when judging the credibility of the two officers. The prosecutor's statement was not a direct averment of her personal belief in the officer's credibility. We therefore conclude that the prosecutor's comments were harmless beyond a reasonable doubt and that Nakoa's right to a fair trial was not substantially prejudiced.

III.

Based on the foregoing, we affirm the conviction of escape in the second degree.

*Iris M. Arakawa* (*William E. McGrath* and *Theodore Y.H. Chinn* on the briefs), Deputy Public Defenders, for Defendant–Appellant.

*Dale Yamada Ross*, Deputy Prosecuting Attorney, for Plaintiff–Appellee.