874 So.2d 1276 (2004)
Andre APPLEWHITE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-1919.
District Court of Appeal of Florida, Fifth District.
June 18, 2004.
*1277 James B. Gibson, Public Defender, and Noel A. Pelella, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Mary G. Jolley, Assistant Attorney General, Daytona Beach, for Appellee.
GRIFFIN, J.
Andre Applewhite ["Applewhite"] appeals his judgment and sentence. He contends that the trial court erred in denying his request for a jury instruction on a lesser included offense and in granting the State's request for a special jury instruction. We affirm.
On July 18, 2002, Applewhite was charged by amended information with escape[1] and battery upon a law enforcement officer. Applewhite was found guilty of escape but was acquitted of battery. Applewhite was sentenced as a habitual felony offender to thirty years' imprisonment.
Prior to trial, the State filed a request for a special jury instruction on escape. Over Applewhite's objection, the court granted the motion.
At trial, the events resulting in the charges were developed. Deputy Christopher Stronko ["Stronko"] with the Seminole County Sheriff's Office testified that he had known Applewhite for five or six years, and that he came into contact with Applewhite on that day at 1063 Williams Street in east Altamonte Springs. Stronko was assisting Deputy Kirby Hilton ["Hilton"], who was already on the scene when Stronko arrived. They knew that Applewhite was on community control, and Hilton was having a discussion with Applewhite about whether or not he was allowed to be in that location. As Stronko approached the scene, he observed Hilton tell Applewhite to place his hands on the car because he was under arrest, and he overheard a conversation about why he was under arrest. Applewhite then placed his hands on the fender of the car, and Hilton unsnapped his handcuff case to retrieve the restraints. When Hilton went to place the handcuffs on Applewhite, Applewhite attempted to get away. Once Applewhite broke free, he was intercepted by Stronko. Applewhite shoved Stronko, but Stronko was able to restrain Applewhite so that Hilton could handcuff and secure him.
On cross-examination, Stronko testified that he also observed Hilton hand a cell phone to Applewhite, who talked to someone for a minute or so before handing the phone back to Hilton, and then Hilton told Applewhite to put his hands on the car. He also testified that the distance Applewhite ran from Hilton to Stronko was only six or seven feet.
Lorraine Johnson ["Johnson"], Applewhite's community control officer, testified that on December 4, 2001, Applewhite's approved residence was 137 Leon Street in Altamonte Springs. Johnson had informed Applewhite two days prior to the offense that if he was away from that residence without permission, he would be arrested for violation of his community control. She stated that she works with the deputy sheriffs in the areaincluding Hilton and Stronkoand advises them who is on community control in that districtincluding Applewhite. On the date of the offense, Applewhite was given permission to look for a job from 10 a.m. until 4 p.m., which he was to document in a "job hunt log." Johnson had explained to him that as a condition of his community control, he was not allowed to stop anywhere else while looking for a job. On the date *1278 in question, Johnson received a phone call from Hilton and also spoke with Applewhite at that time. After speaking to both, she instructed Hilton to arrest Applewhite for violating community control because he did not have permission to be at 1063 Williams Street.
Applewhite testified that when he was arrested, he was at 1063 Williams Street to pick up his black tennis shoes that he let somebody borrow. Applewhite stated that when Hilton concluded his conversation with Johnson, he told Applewhite to put his hands on the car. As Hilton unsnapped the handcuffs, he ran but collided with Stronko. On cross-examination, when Applewhite was asked if he had any doubt that when he heard the handcuffs being unsnapped that he was being arrested, he responded, "No, not really." Applewhite admitted that he had nine prior felony convictions.
On appeal, Applewhite first contends that he was entitled to a jury instruction on resisting arrest without violence as a necessarily lesser included offense of escape because escape cannot be proven without also establishing proof of all of the elements of resisting arrest without violence.
The State responds that resisting arrest without violence is a permissive lesser included offence, and Applewhite was not entitled to an instruction on the permissive lesser offense of resisting without violence because the statutory elements of that crime were not included in the charging document. It notes that resisting an officer without violence is not listed in the schedule of lesser included offenses as either a category one or a category two lesser offense. The State points out that Applewhite has cited no case where an instruction on resisting without violence has been given as a lesser included offense of escape.
Resisting an officer without violence is defined in Section 843.02, Florida Statutes (2001), as:
Whoever shall resist, obstruct, or oppose any officer ... in the execution of legal process or in the lawful execution of any legal duty, without offering or doing violence to the person of the officer, shall be guilty of a misdemeanor of the first degree....
The elements of this offense are: (1) defendant resisted, obstructed or opposed the victim; (2) at the time the victim was engaged in the execution of legal process or lawful execution of a legal duty; and (3) at the time the victim was an officer. Fla. Std. Jury Instr. (Crim.) 21.2.
Escape is defined in section 944.40, Florida Statutes (2001) as:
Any prisoner confined in any prison, jail, private correctional facility, road camp, or other penal institution, ... working upon the public roads, or being transported to or from a place of confinement who escapes or attempts to escape from such confinement commits a felony of the second degree....
The elements of this offense are: (1) defendant was a prisoner, which is defined as any person who is under arrest and in the lawful custody of a law enforcement official;[2] (2) while a prisoner, defendant was being transported to or from a place of confinement; and (3) defendant escaped or attempted to escape by intending to avoid lawful confinement. Fla. Std. Jury Instr. (Crim.) 27.1. The standard jury instructions do not identify any lesser included offense for escape. Id.
First, we conclude that resisting an officer without violence is not a necessarily lesser included offense because a *1279 defendant can commit the crime of escape without resisting, obstructing or opposing an officer. When a defendant requests an instruction on a permissive lesser included offense, the trial court is required to grant the request only if: (1) the accusatory pleading specifically alleges all of the statutory elements of the lesser offense; and (2) a finding of guilt on the offense would be supported by the evidence submitted at trial. Overway v. State, 718 So.2d 308, 310 (Fla. 5th DCA 1998). This information charged: "[Applewhite], being a prisoner lawfully confined in the custody of a law enforcement official, ... and being transported to or from a place of confinement, did intentionally escape or attempt to escape from said confinement...." Based on the charge in the information, it was not error to refuse Applewhite's proposed instruction.
Applewhite next contends that when the court read the special instruction on escape requested by the State, it was tantamount to directing a guilty verdict on the escape charge. The State responds that the instruction is an accurate statement of the law as explicated in State v. Ramsey, 475 So.2d 671, 672 (Fla.1985) (defendant, who upon being informed that he was under arrest, ran from scene and was properly charged with escape, notwithstanding that he had not been restrained and arrest procedure had not progressed to point where officer had removed handcuffs from their carrying place). See also Hutchinson v. State, 771 So.2d 1287 (Fla. 4th DCA 2000) (evidence was sufficient to support conviction of escape because defendant was in custody notwithstanding that the deputy had not completed the act of acquiring total physical control at the instant of escape); Sams v. State, 600 So.2d 1297 (Fla. 5th DCA 1992).
The modified instruction read to the jury consisted of the standard instruction with two additions:
Before you can find the defendant guilty of Escape, the State must prove the following three elements beyond a reasonable doubt:
1. The defendant was under arrest and in the lawful custody of a law enforcement official.
2. While a prisoner, the defendant was being transported to a place of confinement.
3. The defendant escaped or attempted to escape by intending to avoid lawful confinement.
It is not necessary for you to find or for the State of Florida to prove the law enforcement official had completed the act of acquiring total physical control of the defendant in the instant of escape or attempted escape so long as it is proven the law enforcement official had 1) a right to legal custody of the defendant and 2) there was a conscious and intentional act of the defendant in leaving or attempting to leave the established area of such custody.
"Transportation to a place of confinement" begins at the time an individual is placed under arrest.
(Emphasis supplied.) The additional language added to the standard instruction is consistent with Ramsey and, more to the point, is pertinent to the particular facts presented in this case. We find no abuse of discretion in giving the State's requested instruction. See James v. State, 695 So.2d 1229 (Fla.1997); Carpenter v. State, 785 So.2d 1182 (Fla.2001).
AFFIRMED.
PETERSON and ORFINGER, JJ., concur.
NOTES
[1] § 944.40, Fla. Stat. (2001).
[2] § 944.02(6), Fla. Stat. (2001).