DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**V.R.J.,** a minor,
Appellant,

v.

**STATE OF FLORIDA,**
Appellee.

No. 4D20-414

[November 12, 2020]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Robert B. Meadows, Judge; L.T. Case No. 562019CJ000339A.

Carey Haughwout, Public Defender, and Patrick B. Burke, Assistant Public Defender, West Palm Beach, for appellant.

Ashley Moody, Attorney General, Tallahassee, and MaryEllen M. Farrell, Assistant Attorney General, West Palm Beach, for appellee.

GERBER, J.

The issue in this appeal is whether a juvenile, who after being ordered into secure detention during a court hearing, and while waiting to be removed from the courtroom while other cases proceed, instead absconds the courtroom without permission, can be found guilty of escape from a juvenile facility in violation of section 985.721(3), Florida Statutes (2018), which provides in pertinent part: "An escape from … [l]awful *transportation to* or from any … secure detention facility or residential commitment facility, constitutes escape …." § 985.721(3), Fla. Stat. (2018) (emphasis added). We say yes, and affirm the circuit court's denial of the juvenile's pre-trial motion to dismiss and his in-trial motion for judgment of dismissal.

We present this opinion in four parts:
1. The juvenile's pre-trial motion to dismiss;
2. The juvenile's in-trial motion for judgment of dismissal;
3. The parties' arguments on appeal; and
4. Our review.

# 1. *The Juvenile's Pre-Trial Motion to Dismiss*

The state filed a delinquency petition alleging:

> On or about December 19, 2018, [the juvenile] did unlawfully escape from a secure detention facility maintained for the temporary detention of children pending adjudication, disposition, or placement or from a residential treatment facility described in Florida Statute 985.03(44), maintained for the custody, treatment, or rehabilitation of children found to have committed delinquent acts or violations of law, or from lawful transportation to or from any secure detention facility or residential commitment facility, in violation of Florida Statutes 985.721 and 944.40[.]

The juvenile filed a sworn motion to dismiss under Florida Rule of Criminal Procedure 3.190(c)(4). The motion described the undisputed facts as follows. The circuit court adjudicated the defendant on other cases and ordered him into a Department of Juvenile Justice (DJJ) secure detention facility until an opening for a program became available. After being fingerprinted, the juvenile was handed over to two DJJ officers in the courtroom. Several minutes later a disruption occurred in the courtroom and the juvenile was observed exiting the courtroom. The juvenile was in the lobby outside the courtroom when pursued and cuffed by law enforcement. Based on those undisputed facts, the motion argued section 985.721 did not apply to the juvenile's conduct, and although other remedies were available for the juvenile's conduct, "as a matter of law escape is not the remedy herein."

In response to the motion, the state filed a sworn traverse. In the traverse, the state alleged additional facts existed which the motion had omitted. Specifically, the state alleged the juvenile was awaiting transport to the DJJ detention center pending placement in his nonsecure restrictiveness level residential program; the DJJ staff did not give the juvenile permission to leave the jury box area or to leave the courtroom to go to the elevator; and when the juvenile left the jury box area, he stated, "F*** this s***." Based on the totality of facts alleged in the motion and traverse, the state argued a prima facie case existed that the juvenile had violated section 985.721(3), Florida Statutes (2018), by escaping from lawful transportation to a secure detention facility.

The circuit court (a different judge than the judge before whom the alleged escape occurred) denied the juvenile's motion to dismiss. The court

reasoned that because the state had filed a traverse which alleged material facts were in dispute, the court was required to deny the motion to dismiss. Thus, the circuit court did not rule on the motion's merits. Instead, the circuit court set the case for a non-jury trial.

At the beginning of the non-jury trial, the state brought up the juvenile's motion to dismiss and told the court "I don't believe the Court issued a ruling … on that motion." [Perhaps the state was referring to the absence of a ruling on the motion's merits.] The circuit court then ruled:

> As far as the motion to dismiss, the Court will find that the State has made a prima facie case for the charges against [the juvenile], based on the fact that the material facts that are in both [the motion to dismiss and the traverse] is that [the juvenile] had already been sentenced and at that time was awaiting transport ….

When the circuit court asked if the parties had any other pretrial matters, defense counsel stated, "I will say something … with regards to your … ruling." The court permitted defense counsel to do so. Defense counsel argued, "[Section 985.721] requires that [this] is commitment facilities … or being transported to and from a place of confinement …. He was still here in the courthouse, they stopped him right out here in the hallway." The circuit court responded, "I don't deny that that's a defense to the charge, but I believe as far as a prima facie case for the charge … I believe the State has made the case."

## 2. *The Juvenile's In-Trial Motion for Judgment of Dismissal*

The state began its case-in-chief by requesting the court to take judicial notice of the detention order entered against the juvenile on the other delinquency cases which brought the juvenile into court on the day of the alleged escape. Defense counsel had no objection. The court granted the request.

A courtroom deputy testified that after the circuit court completed the disposition on the other delinquency cases, he fingerprinted the juvenile, had the juvenile sit in the jury box, and told the DJJ probation officer that the juvenile was "now in [DJJ] custody." The juvenile was not cuffed at that time. When the deputy turned his back to give the fingerprint card to the clerk, the deputy heard some commotion behind him, turned around, and saw the juvenile at the courtroom door heading into the hallway. The deputy called out the juvenile's name, but the juvenile did not stop. The deputy went into the hallway after the juvenile, and caught up to him

before he reached the elevators, where the juvenile put up some resistance to keep from getting handcuffed.

To confirm the deputy's description of the juvenile's actions, the state also presented the testimony of a DJJ probation officer who had witnessed the events in the courtroom and another DJJ probation officer who had witnessed the events in the hallway. The state also introduced into evidence, without objection, the courtroom and hallway videos depicting the juvenile's actions. The state further had one of the DJJ probation officers testify that, after the circuit court orders a juvenile be placed in detention, the juvenile is transported from the courtroom to a secure DJJ van which transports the juvenile to a secure DJJ detention center pending further action.

After the state rested its case, defense counsel moved for a judgment of dismissal, arguing that the state had not presented a prima facie case of escape under section 985.721 because the juvenile had merely walked out of the courtroom and was standing near the elevator when he was apprehended. The circuit court denied the motion, finding that the state had presented a prima facie case to allow the trial to continue moving forward.

The juvenile rested without presenting any evidence. During closing arguments, defense counsel asked the court to reconsider the juvenile's motion for judgment of dismissal that based on the testimony and evidence, the juvenile had not committed the offense of escape. Instead, defense counsel argued, the juvenile's actions may have amounted to contempt of court and resisting an officer without violence, but not escape.

The state countered it had established the juvenile committed the offense of escape because he had been committed to secure detention in court and was awaiting transportation from court to the detention facility when he walked out of the courtroom to the elevators.

In rebuttal, defense counsel argued the state had not presented any evidence that anyone had told the juvenile that he had to remain seated and could not move, and the juvenile was not confined in any detention facility.

The circuit court first pronounced its findings of fact. The circuit court stated the videos showed the prior judge specifically advised the juvenile that he had been placed in secure detention, and showed the courtroom deputy fingerprinting the juvenile before taking the juvenile to sit down next to the DJJ officers, including the deputy leaning over to explain

4

something to the DJJ officers, consistent with the deputy's testimony that he had told the DJJ officers that the juvenile was now in their custody. Then, several minutes later, while the prior judge was out of the courtroom, the juvenile looked up at the door, got up, and walked out the door.

Based on those findings of fact, the circuit court then pronounced its conclusions of law:

> [I]t is obvious that [the juvenile] is in the custody of DJJ at [that] time. Not ... only has he been arrested, but at the point when he escapes he is being transported at that time ... to a secure detention facility to await transport to a residential commitment facility. Once he was turned over by the deput[y], just because he was not in a vehicle, does not mean that transport has not begun because the judge had ordered ... prior to [the juvenile] sitting down and prior to him being turned over to DJJ ... told him specifically you are placed in secure detention until placement. So therefore ... I'm finding that he is guilty as charged as to 985[.]721 of escape from a secure detention or residential commitment facility.

After the circuit court entered a final disposition order adjudicating the juvenile as delinquent, this appeal followed.

### 3. *The Parties' Arguments on Appeal*

The juvenile argues the circuit court erred in denying his pre-trial motion to dismiss and his in-trial motion for judgment of dismissal, because section 985.721, as a penal statute which must be strictly construed in the accused's favor, does not encompass the juvenile's conduct in this case. More specifically, the juvenile argues section 985.721 concerns escape from a secure detention facility or residential commitment facility, not leaving a courtroom after a detention order is entered. At worst, the juvenile argues, his conduct amounted to only contempt of court.

The state responds that the juvenile did not preserve the argument on appeal that the circuit court misinterpreted section 985.721's application to this case, because that argument differs from the argument which he made in the circuit court that the state failed to present a prima facie case. On the merits, the state argues its evidence presented a prima facie case of escape within section 985.721's plain meaning. More specifically, the state argues once the circuit court entered the detention order, the juvenile

was in custody and the transportation process had begun, thus satisfying section 985.721(3) ("An escape from … [l]awful transportation to or from any such secure detention facility or residential commitment facility, constitutes escape ….").

### *4. Our Review*

"To preserve an issue for appellate review, … a contemporaneous objection must be made with sufficient specificity 'to apprise the trial court of the putative error.'" *Ramos v. State*, 798 So. 2d 4, 5 (Fla. 4th DCA 2001) (quoting *Williams v. State*, 414 So. 2d 509, 511 (Fla. 1982)).

The juvenile's argument was preserved in the circuit court. Although the juvenile's trial counsel characterized the argument on the motions to dismiss as a failure to prove a prima facie case, whereas the juvenile's appellate counsel characterizes the argument on appeal as the misapplication of section 985.721 to the juvenile's conduct in this case, those characterizations are simply different phrasing of the same argument – that the juvenile's conduct of leaving a courtroom is not a crime under section 985.721, because his conduct did not involve escaping from a DJJ transport vehicle or facility.

On the merits, our review is de novo. *See R.N. v. State*, 257 So. 3d 507, 509 (Fla. 4th DCA 2018) ("We review the [circuit] court's denial of a motion for judgment of dismissal in a juvenile case de novo. And '[t]he construction and application of a statute is an issue of law subject to *de novo* review.'") (citations omitted); *N.H. v. State*, 111 So. 3d 950, 951 (Fla. 2d DCA 2013) ("We review the denial of a motion to dismiss in a delinquency case de novo.").

"A motion for judgment of [dismissal] pertains to the legal sufficiency of the state's evidence. If the evidence, taken in a light most favorable to the state does not support a conviction, the motion must be granted. If the state establishes the existence of each element of the crime charged, then the motion must be denied." *T.L.T. v. State*, 53 So. 3d 1100, 1102 (Fla. 4th DCA 2011).

"To answer a question of statutory construction, courts must first look to the statute's language, considering its words in the context of the entire section rather than in isolation. If the statutory language is clear and unambiguous, the court must recognize the statute's plain meaning and, therefore, need not employ any other rules of statutory construction." *State v. Lewars*, 259 So. 3d 793, 797 (Fla. 2018) (internal citations omitted).

"Courts may determine the plain and obvious meaning of a statute's text by referring to dictionaries." *State v. D.C.*, 114 So. 3d 440, 442 (Fla. 5th DCA 2013) (citations omitted).

"Under the rule of lenity, ambiguous criminal statutes must be construed in favor of the accused.  However, the rule of lenity is a canon of last resort that applies only when, after consulting traditional rules of statutory construction, the statute is still ambiguous.  *The rule of lenity is inapplicable when a statute is unambiguous.*"  *State v. Sampaio*, 291 So. 3d 120, 125 (Fla. 4th DCA 2020) (emphasis added; citations omitted).

Applying the foregoing standards of review and the dictionary definition of "transportation," we conclude the circuit court properly denied the juvenile's pre-trial motion to dismiss and in-trial motion for judgment of dismissal.  Section 985.721(3) is unambiguous, the rule of lenity does not apply, and the juvenile's conduct, as described in the state's traverse and trial evidence, proved he had violated section 985.721(3).

Section 985.721(3) provides in pertinent part:  "An escape from ... [l]awful ***transportation*** to or from any ... secure detention facility or residential commitment facility, constitutes escape ...." § 985.721(3), Fla. Stat. (2018) (emphasis added).

Merriam-Webster's dictionary defines transportation as "1: an act, process, or instance of transporting or being transported[;] 2a: means of conveyance or travel ***from <u>one place</u> to another***[,] . . . ." Merriam-Webster Online Dictionary (2020), available at https://www.merriam-webster.com/dictionary/transportation. (emphasis added).  The dictionary further defines transport as verb meaning "to transfer or convey ***from <u>one place</u> to another*.*"  Merriam–Webster Online Dictionary (2020), available at https://www.merriam-webster.com/dictionary/transport. (emphasis added).

Here, the "one place" from which the juvenile's transport began was the courtroom.  The fact that the DJJ officers had not physically begun moving the juvenile from the courtroom does not change the fact that the courtroom was the "one place" from which the juvenile's transport began. As the circuit court concluded below:  "Once [the juvenile] was turned over by the deput[y], just because he was not in a vehicle, does not mean that transport has not begun because the judge had ordered ... prior to [the juvenile] sitting down and prior to him being turned over to DJJ ... told him specifically you are placed in secure detention until placement."

7

Further, as our supreme court indicated in *State v. Ramsey*, 475 So. 2d 671 (Fla. 1985), involving escape under section 944.40, Florida Statutes, a comparable statute:

> Since a suspect does not become a "prisoner" until he is placed under arrest, and since he cannot be transported to a place of confinement until he becomes a prisoner, unless the facts clearly show that the officer had no intention of taking him from the scene, "transportation to a place of confinement" begins at the time the suspect is placed under arrest, because that is the very first step in the process. Even though not yet physically restrained, one who has been placed under arrest has had his liberty restrained in that he is not free to leave. His confinement has thus begun and if he escapes from lawful custody, the fact that he may be properly charged with resisting arrest does not affect the result, because oftentimes a single act violates two or more criminal statutes.

> Thus a literal interpretation of the words of the statute itself leads to the conclusion that one who meets the definition of prisoner is being transported to a place of confinement at the point in time when he becomes a prisoner.

*Id.* at 672 (internal indentations and citation omitted); *see also Applewhite v. State*, 874 So. 2d 1276, 1279 (Fla. 5th DCA 2004) (trial court acted within its discretion in instructing jury on definition of "transportation to place of confinement" within meaning of escape statute in that defendant ran after officer told him that he was under arrest but before officer could handcuff him).

Applying the foregoing authorities here, the circuit court properly denied both the juvenile's pre-trial motion to dismiss and his in-trial motion for judgment of dismissal. The state's sworn traverse alleged a prima facie case that the juvenile had violated section 985.721(3) when, after the prior judge entered the detention order, and while the juvenile was awaiting transport from the courtroom to the DJJ detention center, the juvenile left the courtroom without permission. Further, at trial, the state proved a prima facie case that the juvenile had violated section 985.721(3) through the courtroom deputy's testimony that, after the circuit court entered the detention order, the deputy placed the juvenile in the jury box and told the DJJ probation officer that the juvenile was now in DJJ custody, but then the juvenile left the courtroom and went down the hallway towards the elevators before being apprehended. The deputy's testimony was confirmed by the testimony of the DJJ probation officer who

had been in the courtroom and the other DJJ probation officer who had been in the hallway. The deputy's testimony was further confirmed by the courtroom and hallway videos depicting the juvenile's actions.

### *Conclusion*

Based on the foregoing, the state's traverse and trial evidence showed the juvenile had been taken into custody and the transportation process had begun. Thus, his escape fell within section 985.721(3)'s plain meaning. Accordingly, we affirm the circuit court's orders denying the juvenile's pre-trial motion to dismiss and in-trial motion for judgment of dismissal.

*Affirmed.*

WARNER and ARTAU, JJ., concur.

\*     \*     \*

**Not final until disposition of timely filed motion for rehearing.**

9