533 So.2d 285 (1988)
Walter Grant KYSER, Appellant,
v.
STATE of Florida, Appellee.
No. 69736.
Supreme Court of Florida.
October 27, 1988.
Michael E. Allen, Public Defender and W.C. McLain, Asst. Public Defender, Second Judicial Circuit, Tallahassee, for appellant.
Robert A. Butterworth, Atty. Gen. and Gary L. Printy, Asst. Atty. Gen., Tallahassee, for appellee.
PER CURIAM.
Walter Grant Kyser appeals his conviction for first-degree murder and sentence of death imposed by the trial judge in accordance with the jury's recommendation. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. Kyser raises nine issues in this appeal, arguing, inter alia, that the trial court erroneously admitted his statements obtained during custodial interrogations after he had requested counsel. We find this issue dispositive and hold that the United States Supreme Court decisions in Smith v. Illinois, 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984), Edwards v. Arizona, 452 U.S. 973, 101 S.Ct. 3128, 69 L.Ed.2d 984 (1981), Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), and Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), require us to vacate Kyser's conviction and sentence and remand this cause for a new trial.
Kyser was convicted of the first-degree shooting murder of a deputy sheriff who was working off duty as a security guard at a Panama City apartment complex in Bay County, Florida. Following Kyser's arrest in the parking lot of a restaurant in Columbus, Georgia, he was read his Miranda rights in the patrol car before he was transported to the police station. When asked at that time for identification, Kyser gave the officers an alias. Kyser *286 was interrogated by officials from Columbus and Bay County, Florida, during his detention at the Columbus police station. While one of the assigned Columbus officers, Detective Boren, was investigating Kyser's identity, Detective Miller of the Bay County sheriff's office began Kyser's questioning. He readvised Kyser of his Miranda rights and asked if he wanted to discuss the Panama City shooting. Kyser stated that he was scared and, when Miller asked why, Kyser responded, "[T]hat guy was a deputy sheriff, wasn't he?" Miller replied in the affirmative. Kyser also said, "Can we talk about something else, I think I want to talk to a lawyer before I talk about that and I hope you understand that." Miller conducted no further discussion concerning the Panama City shooting. Miller left the interview room and Detective Boren of the Columbus Police Department entered without speaking to Miller. Boren proceeded to question Kyser about the shooting for several hours. Miller had reentered the room at a later time and was present during a major portion of this interrogation. Hours later, Kyser advised Boren that another individual was involved and he wanted to speak with his wife before disclosing further information. Boren allowed Kyser to make the telephone call, during which Kyser's wife spoke to Boren and volunteered the name of the individual. Kyser then related a version of the shooting which had him present at the scene but implicated a third person as the triggerman.
After being transported back to Bay County, Florida, Kyser was interviewed by Detective McKeithen, who later testified that he had first advised Kyser of his rights before inquiring about the shooting. Detective McKeithen had not been informed of the prior conversation between Kyser and Miller in Georgia and Kyser's request for counsel. Kyser again gave a statement concerning the incident which Detective McKeithen related at trial.
The trial court held a hearing to consider Kyser's motion for suppression of his statements. Toward the end of the hearing, the trial judge noted that the state had not demonstrated that Kyser had initiated the conversation after requesting counsel, and the trial judge advised both sides that he had not "heard that question answered by any of the officers." The state apparently contended that Kyser had initiated the conversation when he spoke with his wife over the telephone and then had her furnish the name of the alleged triggerman to Detective Boren. We note that the telephone call occurred following a number of hours of interrogation which commenced after Kyser had said, "I think I want to talk to a lawyer before I talk about that." There is no dispute that Miller, who was present during portions of McKeithen's and Boren's interrogations of Kyser, failed to notify those detectives of Kyser's request to talk to a lawyer. The trial court summarily denied Kyser's motion to suppress.
This Court recently addressed a similar admission issue in Long v. State, 517 So.2d 664 (Fla. 1987), cert. denied, ___ U.S. ___, 108 S.Ct. 1754, 100 L.Ed.2d 216 (1988). In Long, the defendant's statement was "I think I might need an attorney." We held that this statement, while equivocal, put officers on notice that the only permissible further questioning could be questions attempting to clarify the suspect's request for counsel. See also Valle v. State, 474 So.2d 796 (Fla. 1985), vacated on other grounds, 476 U.S. 1102, 106 S.Ct. 1943, 90 L.Ed.2d 353 (1986); Waterhouse v. State, 429 So.2d 301 (Fla.), cert. denied, 464 U.S. 977, 104 S.Ct. 415, 78 L.Ed.2d 352 (1983); Cannady v. State, 427 So.2d 723 (Fla. 1983). We stated:
[T]he United States Supreme Court, in its decision in Edwards v. Arizona, [451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981)] made clear that, once an accused invokes his right to counsel, all questioning must cease and the accused is not subject to further interrogation until counsel has been provided. The Court in Edwards held that "when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial *287 interrogation even if he has been advised of his rights."

Long, 517 So.2d at 666 (quoting Edwards v. Arizona, 451 U.S. at 484, 101 S.Ct. at 1884) (emphasis added). Accord Arizona v. Roberson, ___ U.S. ___, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988).
In our view, the statement made by Kyser was less equivocal than that made in Long. We reject the contention that Kyser initiated subsequent contact with the police and hold the admission of the statements made after the request for counsel violated Kyser's fifth amendment rights as that provision is construed by the United States Supreme Court. We cannot consider this error harmless in either the guilt or penalty phase of this trial.
Although the above issue is dispositive, we find it appropriate to address the utilization of escape as one of the underlying felonies under the felony-murder theory. The trial court instructed the jury on three possible underlying felonies: escape, burglary, and attempted burglary. We find the escape theory should not have been presented to the jury under these facts. In Melton v. State, 75 So.2d 291, 294 (Fla. 1954), we set forth four elements necessary to demonstrate an arrest, stating:
[A]n arrest involves the following elements:
(1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him.
See also State v. Parnell, 221 So.2d 129 (Fla. 1969); Bey v. State, 355 So.2d 850 (Fla. 3d DCA 1978). For there to be an escape, there must first be a valid arrest. The evidence in this record does not show that the off-duty deputy ever communicated to Kyser that he was under arrest. The victim did not search Kyser incident to arrest, did not handcuff him or otherwise restrain him, and, more particularly, did not treat him as a person in custody, which is clearly evidenced by the fact that the victim was walking in front of Kyser as they crossed the parking lot just before the shooting. Escape, as a criminal offense, is defined and set forth in section 944.40, Florida Statutes (1975), as follows:
Any prisoner confined in any prison, jail, road camp, or other penal institution, state, county, or municipal, working upon the public roads, or being transported to or from a place of confinement who escapes or attempts to escape from such confinement shall be guilty of a felony of the second degree....
We do not find that the circumstances of this case warrant a conclusion that Kyser was being transported to or from a place of confinement.
For the reasons expressed, we vacate the conviction and sentence and remand for a new trial.
It is so ordered.
EHRLICH, C.J., and OVERTON, McDONALD, SHAW, BARKETT, GRIMES and KOGAN, JJ., concur.