633 So.2d 66 (1994)
Patrick G. SWEENEY, Appellant,
v.
STATE of Florida, Appellee.
No. 92-2245.
District Court of Appeal of Florida, Fourth District.
February 16, 1994.
Rehearing Denied April 6, 1994.
*67 Michael E. Dutko of Bogenschutz & Dutko, P.A., Fort Lauderdale, for appellant.
Robert M. Butterworth, Atty. Gen., Tallahassee, and Don M. Rogers, Asst. Atty. Gen., West Palm Beach, for appellee.
Rehearing En Banc Denied April 6, 1994.
POLEN, Judge.
Patrick G. Sweeney timely appeals from a final judgment adjudicating him guilty of attempted first degree murder of a law enforcement officer, armed escape, resisting arrest with violence and carrying a concealed firearm. Sweeney raised six separate points on appeal. We affirm all six points, however Point I merits some additional discussion.
On September 15, 1991, Officer Andrew Weiman, who was dressed in full police uniform, was working an off-duty detail as a security guard at the Sea Haven Apartment Complex in Pompano Beach. While patrolling the grounds of the Sea Haven, Weiman heard the sound of glass breaking and an alarm sounding across the street at Casa La Quinta Apartment Complex. He then saw a white male, who later became known to him as Patrick Sweeney, running east on the fourth floor walkway of Casa La Quinta. Weiman subsequently ran across the street, where he encountered Sweeney in the alcove underneath the stairwell leading to the floors above. Both parties agree that at this time Officer Weiman did not specifically identify himself as a police officer, tell Sweeney why he was stopped, nor tell him he was under arrest. Detective Weiman did testify that he told Sweeney various times to put his hands against the wall; and when Sweeney didn't, Weiman pushed his shoulder, attempting to spin him around against the wall. Sweeney then resisted, pushed away and retrieved a pistol from a holster hidden in his pants. Detective Weiman testified that Sweeney fired the first shot, and he then chased Sweeney returning fire. Sweeney finally collapsed from being shot.
As his first point on appeal, Sweeney argued that the charge of armed escape was not supported by the evidence, thereby vitiating the charge of attempted first degree felony murder of a law enforcement officer as well, since there would be no underlying felony. The statutory definition of escape is contained in section 944.40, Florida Statutes (1991), which provides in pertinent part:
Any prisoner confined in any prison, jail, road camp, or other penal institution, state, county, or municipal, working upon the public roads, or being transported to or from a place of confinement who escapes or attempts to escape from such confinement shall be guilty of a felony of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
(Emphasis added.) Section 944.02(5), Florida Statutes (1991), defines "prisoner" as:
Any person who is under arrest and in the lawful custody of any law enforcement official, or any person convicted and sentenced by any court and committed to any municipal county jail, or other state prison, prison farm, or penitentiary, or to the custody of the department as provided by law.
(Emphasis added.)
In Brown v. State, 623 So.2d 800 (Fla. 4th DCA 1993), this court held on rehearing that there was insufficient evidence to sustain a defendant's conviction for armed escape. In Brown, after receiving a complaint from two unidentified women, the officer repeatedly asked the defendant to "stop and come back." Id. at 801. Instead of stopping, the defendant kept running, pulled a gun, ignored any request to put the gun down, and fired a shot at the officer. This officer lost track of the defendant. However, another officer in the area located the defendant hiding in a garbage can, and directed him to exit the garbage can and lie down on the ground. When the defendant complied with the officer's direction to step out of the garbage can, he took off running again but was eventually caught.[1]Id.
Our determination in Brown that the evidence was insufficient to sustain a charge of escape rested on the supreme court's analysis in Kyser v. State, 533 So.2d 285, 287 *68 (Fla. 1988), of what constitutes an escape. In Kyser, the supreme court recognized that in order for there to be an escape, there must first be a valid arrest, which involved the following elements:
(1) A purpose or intention to effect an arrest under a real or pretended authority; (2) an actual or constructive seizure or detention of the person to be arrested by the person having present power to control the person arrested; (3) a communication by the arresting officer to the person whose arrest is sought, of an intention then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to detain him.
Id. at 287.
In Brown, we concluded that the elements of a valid arrest as set forth in Kyser were not met. Brown, 623 So.2d at 802. This determination was based on several factors. Most important was that Officer Minton admittedly never communicated his intent to effect an arrest, and that the defendant did not testify that he believed he was under arrest at the time of the escape.
Regardless of whether one agrees with the result of the Brown case, it is the law in our jurisdiction. However, several of the determinative factors in Brown require some additional clarification. First, in recognizing that the defendant in Brown did not testify that he believed he was under arrest, we are sure the court did not mean to imply that all the defendant had to do to avoid conviction is take the stand and deny any understanding of an intent to arrest. Rather, we believe it is for the trier of fact to determine whether to believe such testimony at the time it is offered. We further conclude that the trier of fact's determination should rest on an analysis of whether a reasonable person or the average citizen in similar circumstances would think they were under arrest.
At bar, there appears to be sufficient evidence from which the jury could have concluded that Sweeney understood he was being arrested at the time of his escape. First, Detective Weiman was dressed in full police uniform at the time he confronted Sweeney. This uniform consisted of a name tag, a badge, shoulder stripes, a police radio, a service revolver, a flashlight, and a bullet proof vest. The fact that Weiman's hair was longer then average should not detract from his appearance as a police officer. In addition, while Detective Weiman never actually communicated the words to Sweeney "you are under arrest," his actions communicated such an intent. Detective Weiman physically touched Sweeney by placing his hand on his shoulder to attempt to spin him around and place him against the wall. See California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991) (recognizing that there can be constructive detention which will constitute an arrest which is accomplished by merely touching the body of the accused no matter how slightly). The facts at bar are distinguishable from those in Brown, since they manifest both an intent to effect an arrest, as well as facts from which Sweeney should have understood such intent. Thus, we affirm the judgment and sentence below.
ANSTEAD and STONE, JJ., concur.
NOTES
[1] Although the opinion in Brown does not reflect whether the officers were in uniform, we will assume for our analysis that they were.