704 So.2d 606 (1997)
Marvin ELLIOT, a/k/a Marvin Eugene Elliot, Appellant,
v.
STATE of Florida, Appellee.
No. 96-2676.
District Court of Appeal of Florida, Fourth District.
October 22, 1997.
Order Clarifying Opinion December 2, 1997.
*607 Richard L. Jorandby, Public Defender, and Tatjana Ostapoff, Assistant Public Defender, West Palm Beach, for appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
FARMER, Judge.
We affirm without discussion the trial court's finding that defendant was competent to stand trial. That leaves only the issue as to the denial of the special jury instruction defining the elements of an arrest. As hereafter discussed, we conclude that it was error under the facts of this case to refuse the instruction.
The factual background is deceptively simple. A city police officer responded to a call that a vagrant was urinating in public. He encountered defendant sitting on a curb, drinking from a bottle of beer. Being aware of no municipal ordinance against consuming beer in public, he asked defendant for identification. Defendant responded with a threat to break the beer bottle over the officer's head and proceeded to wave the bottle around. Without telling the man that he was under arrest, the officer quickly grabbed his wrist to knock the bottle from his hand and threw him to the ground. Defendant attempted to push away from the officer and struggled to free himself from the his grip. The officer was able to place himself on top of the struggling man and stay there until another officer arrived on the scene. The struggle lasted for less than a minute; neither man was injured.
Defendant was charged with aggravated assault on the officer with a deadly weapon namely, a beer bottleand resisting arrest without violence. During the jury charge conference, the trial judge announced that he would give the standard jury instruction on resisting arrest without violence as to the latter charge. The trial court also granted defendant's request for a special jury instruction that "Florida law allows a person to resist an illegal arrest without violence." The court denied his request, however, for the following special instruction:
"A valid arrest involves the following elements:
1. A purpose or intention to effect an arrest under a real or pretended authority;
2. An actual or constructive seizure or detention of the person to be arrested by the person having present power to control the person arrested;
3. A communication by the arresting officer to the person whose arrest is sought, of an intention then and there to effect an arrest;
4. An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to detain him."
The court explained that he denied this special instruction because its content was covered by the standard instruction on resisting arrest and the just-approved special instruction allowing an accused to resist an illegal arrest without violence.
The jury convicted defendant of improper exhibition of a weapon and resisting arrest without violence.[1] On appeal defendant argues *608 error in failing to instruct the jury as to the elements of effecting a lawful arrest. We agree.
In Melton v. State, 75 So.2d 291 (Fla.1954), the question as to what constitutes the effection of a lawful arrest arose in connection with charges of the unlawful possession and concealment of contraband, in this instance "moonshine." The state argued that the moonshine had been lawfully seized incident to a lawful arrest. Defendant argued that no arrest had been effected, and that the officer had merely been serving a search warrant, which was later quashed by the trial court. As the court phrased it, the issue was whether the seizure of the whiskey after simply reading a search warrant to the defendant was within the proper limits of a search incident to an arrest of the defendant. Id. at 294. At that point, the court explained:
"It is uniformly held that an arrest, in the technical and restricted sense of the criminal law, is `the apprehension or taking into custody of an alleged offender, in order that he may be brought into the proper court to answer for a crime.' When used in this sense, an arrest involves the following elements: (1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him." [c.o.]
Id. The court then said that the crux of the case was whether an arrest was effected before the seizure of the contraband and concluded that it was not. Because the arrest followed the seizure, the seizure could not be upheld as incident to the arrest.
In Giblin v. City of Coral Gables, 149 So.2d 561 (Fla.1963), the court further examined the third elementcommunication of an intention to effect an arrestof the Melton decision. In that civil case, plaintiff had sued for damages for false arrest, contending on a motion for directed verdict that her arrest was illegal. The uncontroverted facts showed that a police officer stopped plaintiff's car for exceeding the speed limit, obtained her driver's license, checked her license tag number, checked her inspection sticker, and proceeded to begin writing a traffic citation. At that point, a conversation ensued between the officer and plaintiff, whereupon her husband, originally a passenger, drove the car away from the officer, who then pursued it after warning that they were under arrest.
In holding that the traffic stop was a legal arrest as a matter of law, the Giblin court said:
"The requirement of communication of the `intention or purpose ... to effect an arrest' is never construed, so far as we can determine, in a strict or literal sense in a situation such as that at bar. In the most technical treatment of the subject the authorities note that `there is no required form of words to announce the purpose to arrest,' and upon the theory that `the law does not require the doing of useless things' it is held that when detention by an officer follows immediately on commission of an overt act of criminality or illegality, the offender must be aware, without formality, of his purpose to arrest. The sufficiency of constructive rather than manual apprehension is, of course, well established.
"In the circumstances of this case there can be no doubt that when the police officer compelled petitioner to stop the vehicle she was driving and undertook to keep her in his custody at least pending his decision on their dispute, there was effected `an apprehension of such person sufficient to be considered an arrest.' The arrest was, then, as a matter of law effected independent of the officer's admonitions upon petitioner's departure with her husband." [c.o.]
Id. at 562. As the last of the two paragraphs quoted above indicates, the court held that the traffic stop was itself "an apprehension" of the defendant that itself may be sufficient to communicate to the offender that a lawful *609 arrest has been effected. The directed verdict was therefore improper.
Later in State v. Parnell, 221 So.2d 129 (Fla.1969), the court confronted a reversal of a conviction for breaking and entering with intent to commit larceny. As in Melton, the conviction had rested on some stolen property that the police argued was obtained incident to a lawful arrest. When the police discovered the stolen goods at a home occupied by a man, woman, and children, they told the woman that she was under arrest for possessing stolen property. After she became hysterical, referring to her five children in the house, the police allowed her to remain home until the next day when they took her into custody. Defendant argued that the police did not actually make an arrest when the goods were seized, and thus the evidence was improperly admitted. The district court agreed and overturned the conviction. Id. at 130.
The supreme court disagreed and disapproved the district court's decision. The fact that the accused is not actually taken into custody at the time of the arrest, the court held, does not diminish the legal effect of the arrest. In explaining why its decision in Melton did not support the district court, the supreme court said that Melton and Giblin stand for the proposition that:
"an arrest is legally made when there is a purpose or intention to effect an arrest, an actual or constructive seizure or detention is made by a person having present power to control the person arrested, and such purpose or intention is communicated by the arresting officer to, and understood by, the person whose arrest is sought. In Melton, this court said that all of these elements were present and an arrest effected when, after finding a cache of illicit whiskey, the officer informed the defendant of his intention to take her to the county jail and lodge a charge against her for violation of the liquor laws. Melton v. State, supra, 75 So.2d at page 294. In Giblin, it was held that the appellant was legally arrested within the city limits of Coral Gables when the car she was driving was stopped for speeding by an officer of that city, even though her husband then took control of the car and drove away and the car was not overtaken and the appellant re-apprehended until outside the city limits of Coral Gables. We said in the Giblin case that `The sufficiency of constructive rather than manual apprehension is, of course, well established.' Giblin v. City of Coral Gables, supra, 149 So.2d at page 562." [emphasis supplied]
221 So.2d at 131. The court concluded that the stolen property was lying in plain view, and thus the arrest and seizure were both lawful. See also Bey v. State, 355 So.2d 850 (Fla. 3d DCA 1978) (fact that defendant walked away from officer into his house, after officer told defendant he was under arrest for reckless driving, and that officer did not at moment of communication take defendant into actual custody, insufficient to invalidate lawful arrest where fact of arrest was communicated and defendant understood same).
More recently, in Kyser v. State, 533 So.2d 285, 287 (Fla.1988), defendant was charged and convicted of capital murder. In quashing the use of escape as a predicate offense for felony murder, the court recounted the elements of a lawful arrest as stated in Melton. The court then stated that for an escape there had to be a lawful arrest. The court then said that there was no evidence in the record that the victim, an off-duty officer, ever communicated the fact to defendant that he was under arrest. As the court described the alleged arrest:
"The victim did not search Kyser incident to arrest, did not handcuff him or otherwise restrain him, and, more particularly, did not treat him as a person in custody, which is clearly evidenced by the fact that the victim was walking in front of Kyser as they crossed the parking lot just before the shooting."
Id. at 287. We understand this quoted part of the court's opinion to address the possibility that the circumstances might have communicated the fact of an arrest to the defendant, as in Giblin. See also McAnnis v. State, 386 So.2d 1230 (Fla. 3d DCA 1980) (fact of arrest was communicated to defendant by undercover officer withdrawing his firearm, declaring that he was a police officer *610 and stating his intention to detain defendant until arrested by other officers); State v. Padilla, 235 So.2d 309 (Fla. 3d DCA) (flashing light into defendant's car and requesting that he pull over insufficient to communicate fact of arrest), cert. denied, 239 So.2d 830 (Fla.1970).
We followed and applied the Melton line of cases in Brown v. State, 623 So.2d 800 (Fla. 4th DCA 1993), review denied, 634 So.2d 627 (Fla.1994). In that case, the defendant was charged with escaping after being arrested. The facts involved hot pursuit of a fleeing suspect by two police officers. At one point the suspect drew a gun and fired a shot at one pursuing officer. Another officer eventually found the suspect hiding in a garbage can. When he removed the lid and saw the suspect there, the officer quickly stepped back from the container and drew his own gun. Without expressly telling the suspect that he was under arrest, the officer instructed him to step out of the can, turn around and lie face down on the ground. The suspect stepped out of the can and turned around, but then suddenly fled again. It was this latter event that constituted the basis for the escape charge. In reversing the escape conviction, we stated:
"In the instant case, the evidence failed conclusively to demonstrate that there had been an arrest. When Officer Minton ordered appellant out of the garbage can, he admittedly never communicated his intention to place appellant under arrest. Appellant easily evaded Minton and was able to flee unscathed. The record is silent as to whether Minton actually pointed his revolver at appellant. Furthermore, appellant testified that he did not believe that he was in fact under arrest at that time. Consequently, the instant facts do not meet all of the elements of a valid arrest as set forth in [Melton]."[2] [emphasis supplied]
Id. at 802. Under our statutes, the charges of escape from an arrest and resisting arrest bear a common element. In each, the defendant is alleged to have committed a crime related to a validly effected arrest. In each, it is necessary that there be evidence that defendant was placed under arrest and that he knew that he was under arrest.
It is apparent to us from these decisions that defendant's proposed instruction here correctly states the law in Florida, so far as it goes, as to the elements of effecting a lawful arrest. The proposed instruction also logically related to an issue raised in this case as to whether the officer had lawfully effected the arrest by complying with the third and fourth elements of the Melton formula. The question presented to the trial judge was whether defendant was entitled to have the jury instructed as to how a lawful arrest must be effected or performedan arrest that the state has charged was unlawfully resisted with violence.
Defendant's chief concern is that jury be told whether the law requires that a putative arrestee be given some notice that he is under arrest as a prerequisite to being held accountable for resisting arrest. The legal question posed is whether a person can be convicted of resisting arrest if he has not been made to know that the officer was in the process of arresting him. We agree that one cannot be convicted for resisting arrest if one has not been placed on noticeeither by a statement from the arresting officer, or by the circumstancesthat he is under arrest at the time of the alleged resistance.
The disputed factual issue for resolution by the jury was whether defendant was defending himself against the officer's reaction to his waving of the beer bottle, or whether he was resisting what he is now said to be accountable for knowing was a lawful arresti.e., a seizure of his person by police authority after communication to him of that purpose. In this case, the officer testified that he never told defendant that he was under arrest. To this extent, this circumstance is indistinguishable from that in Brown, which we as a panel of this court are obligated to follow. The jury might properly find from the officer's testimony that defendant reasonably understood that the officer *611 was merely reacting to the waving of the beer bottle. Hence, we believe that defendant was entitled to have the jury instructed substantially as he proposed in the instruction refused.
Of course, as Giblin shows, the state is entirely free to argue that the factual circumstances were themselves sufficient to place defendant on notice that he was under arrest. In that regard, the state is also free to request that the trial judge also instruct the jury that the law recognizes circumstantial notice of the fact of arrest. If the trial court concludes that evidence in the record would be minimally sufficient to raise the contention of circumstantial notification, the court would then be authorized to approve an appropriate instruction to that effect.
The question is whether a defendant must be told or placed on notice that he is under arrest before he can be said to have resisted the arrest nonviolently. We conclude that under the circumstances we face today, the defendant was entitled to have the jury instructed that the charge of resisting an arrest requires that the arrestee be given notice by word or circumstance that he is being detained, only after which can an arrestee properly be charged with resistance.
We therefore reverse for a new trial.
DELL and GUNTHER, JJ., concur.

ORDER
BY ORDER OF THE COURT:
ORDERED that appellee's motion filed November 5, 1997, to clarify opinion is granted. A new trial is required on the resisting arrest without violence count. The count on improper exhibition of a weapon is affirmed.
NOTES
[1] We cannot help noting that if the prosecutor had merely charged defendant with the assault count we would not be required to reverse.
[2] Actually, our opinion quoted from Kyser v. State, 533 So.2d 285, 287 (Fla.1988), which itself quoted Melton.