962 So.2d 1068 (2007)
Kenneth Nelson HEBERT, Appellant,
v.
STATE of Florida, Appellee.
No. 4D06-1261.
District Court of Appeal of Florida, Fourth District.
September 12, 2007.
*1069 Carey Haughwout, Public Defender, and Dea Abramschmitt, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Mark J. Hamel, Assistant Attorney General, West Palm Beach, for appellee.

ON MOTION FOR REHEARING/CLARIFICATION
STEVENSON, J.
Having considered the appellant's "Motion for Rehearing/Clarification," we agree that the opinion dated July 5, 2007, contains a scrivener's error. We therefore withdraw our prior opinion and issue the following in its place.
Kenneth Hebert was tried by jury and found guilty of aggravated assault on a law enforcement officer with the intent to commit a felony, i.e., escape (count I), escape (count II), aggravated battery with a deadly weapon (count III), and resisting an officer with violence (count IV). While Hebert has raised a number of issues on appeal, we write to address only twohis claims that the trial court erred in denying his motion for judgment of acquittal directed to the charges of aggravated assault on a law enforcement officer with the intent to commit a felony (escape) and escape. We find merit in Hebert's argument and thus reverse his convictions as to counts I and II.
Hebert and a man named Wesley Alan Shelton were domestic partners and shared a home. The charges against Hebert arose out of the events that unfolded following an unspecified dispute or argument between him and Shelton. When Shelton returned home the morning after the argument, Hebert attacked him and attempted to strangle him with a belt. Shelton fled and called police.
After knocking and speaking with a roommate of Hebert and Shelton, Deputy Minella entered the residence and saw Hebert standing in a hallway. The deputy saw Hebert holding what he believed to be a shotgun, told Hebert he was under arrest and instructed him to put down the gun. The deputy then fled the home. Next, the officer heard breaking glass and observed the butt of a rifle being used to break the glass out of a window in the home. The deputy kept shouting to Hebert that he was under arrest and to put the gun down. According to the deputy, rather than comply, Hebert exited the residence and pointed the gun at him. The officer fired two shots. Hebert fled into a nearby home that was under construction. The deputy continued to yell for Hebert to put down the gun.
Hebert exited the home and pointed the gun at the officer a second time. The deputy fired two more shots. Hebert ran and the chase continued. Hebert then raised his gun at the officer a third time. The deputy fired another shot. This time, the bullet grazed Hebert and he went down. The deputy handcuffed Hebert, discovering the gun was not a shotgun, but a BB gun. In a taped statement to police, Hebert conceded the officer had done nothing wrong and admitted hearing the officer instruct him to come out and to let the officer see his hands. Hebert also indicated he "believed" he heard the officer tell him he was under arrest.
The crime of "escape" is defined to include the circumstance when a "prisoner" "being transported to or from a place of confinement" "escapes . . . from such confinement." § 944.40, Fla. Stat. (2005). A "prisoner" is defined for purposes of *1070 chapter 944 to include "any person who is under . . . criminal arrest and in the lawful custody of any law enforcement official." § 944.02(6), Fla. Stat. (2005). Our supreme court has thus held the escape statute criminalizes an individual's flight following an arrest, reasoning that "`transportation to a place of confinement' begins at the time the suspect is placed under arrest.'" State v. Ramsey, 475 So.2d 671, 672 (Fla.1985) (quoting Judge Orfinger's special concurrence in State v. Iafornaro, 447 So.2d 961, 962 (Fla. 5th DCA 1984)); see also Kyser v. State, 533 So.2d 285, 287 (Fla.1988) ("For there to be an escape, there must first be a valid arrest."). There can be no escape from a mere detention. See Pollen v. State, 834 So.2d 380, 382 (Fla. 3d DCA 2003).
The issue in this case is whether Hebert was ever placed under arrest. A valid arrest exists, such that an escape conviction can be sustained, when the following four factors are present:
"(1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrested; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him."
Kyser, 533 So.2d at 287 (quoting Melton v. State, 75 So.2d 291, 294 (Fla.1954)); see also Sweeney v. State, 633 So.2d 66, 68 (Fla. 4th DCA 1994). Hebert cannot and does not claim that there was any insufficiency in the evidence regarding factors (1), (3), and (4). Deputy Minella, who was in uniform and driving a marked patrol car, testified he repeatedly told Hebert he was under arrest, to put the gun down, and to stop. Moreover, in his taped statement to police, Hebert acknowledged he was aware Minella was a police officer and that the officer told him he was under arrest.
What Hebert does argue is that there was insufficient evidence regarding that portion of factor two requiring "[a]n actual or constructive seizure or detention of the person to be arrested." Hebert relies upon California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), wherein the Court stated:
An arrest requires either physical force . . . or, where that is absent, submission to the assertion of authority. "Mere words will not constitute an arrest, while, on the other hand, no actual, physical touching is essential. The apparent inconsistency in the two parts of this statement is explained by the fact that an assertion of authority and purpose to arrest followed by submission of the arrestee constitutes an arrest. There can be no arrest without either touching or submission."
499 U.S. at 626-27, 111 S.Ct. 1547 (quoting Perkins, The Law of Arrest, 25 Iowa L.Rev. 201, 206 (1940) (footnotes omitted)) (bolded emphasis added); see also Hollinger v. State, 620 So.2d 1242, 1243 (Fla. 1993) (citing Hodari and stating "[a] person who flees from a show of authority has not been seized, while a person who remains in place and submissive to the show of authority has been seized").
Hebert contends Hodari's definition of an "arrest" applies in assessing whether a suspect has been "arrested" for the purpose of sustaining an escape conviction and the evidence failed to demonstrate either a touching or a submission to authority on his part. The State, on the other hand, insists (1) that Hodari's holding that there can be no arrest absent a physical touching *1071 or submission on the part of the suspect was made in the Fourth Amendment context for the purpose of determining whether evidence was subject to suppression and (2) that Florida's courts are not bound to apply Hodari's holding in determining whether there has been an arrest for purposes of sustaining a conviction under the escape statute. Regardless of whether Florida's courts are "bound" to apply Hodari in the escape context, this court has twice done so.
In Sweeney v. State, 633 So.2d 66 (Fla. 4th DCA 1994), after hearing the sound of glass breaking and an alarm, an officer found the defendant hiding under a stairwell. Without identifying himself as an officer, informing the defendant why he was being stopped or instructing the defendant that he was under arrest, the uniformed officer told the defendant to put his hands against the wall and, when he did not comply, pushed the defendant's shoulder in an attempt to turn him. The defendant resisted, pushed away, pulled out a gun, and fired a shot. The officer chased the defendant and returned fire. As a consequence of these events, the defendant was charged with and convicted of a number of offenses, including attempted first degree felony murder and armed escape. The defendant insisted he was entitled to reversal as the evidence was insufficient to support the escape conviction. This court rejected the argument, citing Hodari and noting that the officer's actions communicated an intent to arrest and that the officer physically touched the defendant. In Thomas v. State, 805 So.2d 102 (Fla. 4th DCA 2002), citing Hodari, this court upheld an escape conviction where the officer communicated an intent to arrest and the defendant acquiesced to this show of authority. See also Brown v. State, 623 So.2d 800 (Fla. 4th DCA 1993) (on reh'g) (reversing an escape conviction, without referencing Hodari, where the evidence established neither a physical touching of the defendant by the officer nor an acquiescence by the defendant to the attempted arrest).
We acknowledge the State's reliance on Bey v. State, 355 So.2d 850 (Fla. 3d DCA 1978). There, police observed the defendant driving in a reckless manner and followed him to his home. The officer then instructed the defendant to provide his license. The defendant refused and headed towards the front door of his home. The officer told the defendant he was under arrest and instructed him to stop. The defendant said "you can't arrest me" and ran into the house. The officer followed the defendant into the house and, thereafter, the defendant struck the officer. On appeal, the defendant insisted his conviction for resisting an officer with violence had to be reversed as the officer was not lawfully in his home and thus not in the execution of a lawful duty at the time of the striking. A statute, though, provided that if a person is "lawfully arrested" and escapes, the officer from whose custody he escapes may pursue and retake him without a warrant "`at any time and in any place.'" Id. at 851 (quoting Florida Statutes section 901.22). The defendant insisted he was not under arrest at the time he fled into his home because the officer had not actually or constructively detained him. The court cited the Kyser factors, recognizing that element (2), i.e., "an actual or constructive seizure or detention," was in question. Nonetheless, the panel held "[w]e are of the opinion that under modern day conditions, if all of the other elements of an arrest are present, when a police officer confronts and tells a person that he is under arrest and the officer has the present power to control the person, although he may not actually do so, a constructive arrest has been affected." Id. at 852. The court thus affirmed the defendant's conviction. Because Bey was decided prior to Hodari, we find it neither persuasive nor in direct conflict.
*1072 Returning to the case before us, we must conclude the evidence was insufficient to sustain an escape conviction as it demonstrated nothing more than a show of authority; the required physical touching or submission to the officer's authority are absent. Hebert never submitted or acquiesced to the officer's orders that he stop because he was under arrest and Hebert continued to flee up until the time he was shot. And, even if Deputy Minella's striking Hebert with a bullet were characterized as a "physical touching," such touching could not sustain an escape conviction because thereafter Hebert never attempted to escape or flee.
We thus reverse Hebert's convictions for aggravated assault on a law enforcement officer with intent to commit a felony, i.e., an escape (count I), and escape (count II). With respect to count I, however, the evidence was sufficient to sustain a conviction for the lesser-included offense of assault on a law enforcement officer. See §§ 784.011, 784.07(2)(a), Fla. Stat. (2005). We remand with instructions that Hebert be adjudicated guilty of such offense and sentenced accordingly. We have considered the additional issues raised by Hebert and conclude such issues are either without merit or rendered moot by our disposition.
Reversed and Remanded.
POLEN and TAYLOR, JJ., concur.