996 So.2d 873 (2008)
Cedric SPANN, Appellant,
v.
STATE of Florida, Appellee.
No. 4D07-4648.
District Court of Appeal of Florida, Fourth District.
October 15, 2008.
Rehearing Denied January 16, 2009.
Carey Haughwout, Public Defender, and John M. Conway, Assistant Public Defender, West Palm Beach, for appellant.
Bill McCollum, Attorney General, Tallahassee, and Don M. Rogers, Assistant Attorney General, West Palm Beach, for appellee.
STONE, J.
We affirm Spann's conviction and sentence. The sole issue on appeal is whether the state presented sufficient evidence to support a conviction on a count for escape.
In the light most favorable to the state, the evidence reflects that Spann was validly stopped for a traffic infraction. Approaching the vehicle, Officer Urbanczyk noticed the driver and passenger reach under their seats in a manner consistent with an attempt to conceal something. Urbanczyk identified Spann as the driver.
After obtaining Spann's driver's license, Urbanczyk walked back to his patrol vehicle when he again noticed "both occupants of the vehicle appearing to reach under the seat trying to conceal something." After requesting backup, Urbanczyk returned and asked Spann to get out of the vehicle. Urbanczyk noticed that Spann was shaking, sweating, and extremely nervous. The officer asked Spann for his consent to search his person. Spann consented, and the following occurred:

*874 A. Once he [Spann] took his shoes off, I looked down and it appeared that there was a controlled substance in one of his shoes.
Q. At that point, what did you do?
A. I looked down. He looked down. We both looked at each other and I immediately told him, put your hands behind your back, you're under arrest.
Q. How far are you from him at that point?
A. A foot, two foot [sic]. We're up close at this point and personal.
Q. ... When you said those words, put your hands behind your back, you're under arrest, did you do anything?
A. Yes. I started reaching behind my back to grab my handcuffs. At the same time I was attempting to grab one of his wrists.
Q. And what did the defendant do at that point?
A. The defendant slapped my hand away, pushed me away and at the same time, once my hand was clear of his wrist, pushed me in the chest. I fell back a little bit and he began to run.
The officer responding to Urbanczyk's call for backup confirmed that Urbanczyk said "put your hands behind your back, you're under arrest," before Spann struck Urbanczyk and fled.
Moving for judgment of acquittal, Spann's counsel argued that the state failed to prove a prima facie case that Spann was in lawful "custody," a required element of escape, prior to fleeing. The trial court denied this motion.
Section 944.40, Florida Statutes, defines the crime of escape as committed when "[a]ny prisoner ... being transported to or from a place of confinement ... escapes or attempts to escape from such confinement." "`Prisoner' means any person who is under ... criminal arrest and in the lawful custody of any law enforcement official." § 944.02(6), Fla. Stat. Our supreme court has held that "`transportation to a place of confinement' begins at the time the suspect is placed under arrest." State v. Ramsey, 475 So.2d 671, 672 (Fla.1985).
The court, in Ramsey, stated that "[e]ven though not physically restrained, one who has been placed under arrest has had his liberty restrained in that he is not free to leave. His confinement has thus begun...." Id. (quoting State v. Iafornaro, 447 So.2d 961 (Fla. 5th DCA 1984) (Orfinger, J., specially concurring)).
In Ramsey, an officer stopped Ramsey for a traffic infraction and learned of his outstanding capiases. Id. at 671. The officer "placed [Ramsey] under arrest, and instructed him to put his hands on the trunk of the patrol car. Ramsey then turned around and said, `No way,' and ran from the scene." Id. ("Ramsey had not been restrained and the arrest procedure had not progressed to the point where the deputy had removed his handcuffs from their carrying place.").
The court addressed the issue of when "transportation" begins under section 944.40, defining escape to occur when a prisoner "being transported to or from a place of confinement" escapes "from such confinement." § 944.40, Fla. Stat. Ramsey held that "`transportation to a place of confinement;' begins at the time the suspect is placed under arrest." Id. at 672. Thus, Ramsey stands for the proposition that an arrest, in the context of an escape charge, does not require physical restraint, and instead, occurs when a person "has had his liberty restrained in that he is not free to leave." Id. at 672.
In Kyser v. State, 533 So.2d 285, 287 (Fla. 1988), the supreme court clarified the elements of arrest as requiring:

*875 "(1) A purpose or intention to effect an arrest under a real or pretended authority; (2) An actual or constructive seizure or detention of the person to be arrested by a person having present power to control the person arrest; (3) A communication by the arresting officer to the person whose arrest is sought, of an intention or purpose then and there to effect an arrest; and (4) An understanding by the person whose arrest is sought that it is the intention of the arresting officer then and there to arrest and detain him."
Id. (emphasis added).
We have considered Hebert v. State, 962 So.2d 1068, 1070 (Fla. 4th DCA 2007), and deem it distinguishable. In Hebert, a deputy, called to Hebert's home, while standing outside, saw Hebert standing in a hallway holding a shotgun. The deputy, from some distance away, "told Hebert he was under arrest and instructed him to put down the gun.... [R]ather than comply, Hebert exited the residence and pointed the gun at the deputy, who fired two shots. Hebert fled into a nearby home that was under construction." Id. at 1069. Hebert argued he could not be guilty of escape because he was never, in fact, arrested, notwithstanding that the officer told him so. Id. at 1069-70.
In Hebert, unlike this case, there was not a valid arrest, as the state failed to prove any restraint of liberty such as physical touching, submission to the officer's authority, or other control. Here, the facts are much more akin to those in Ramsey than in Hebert.
In Thomas v. State, 805 So.2d 102, 105 (Fla. 4th DCA 2002), we upheld an escape conviction where Thomas "acquiesced" to the officer's show of authority. There, the officer told Thomas he was under arrest.
Thomas, complying with the order, pulled his car into a driveway outside his aunt's home and exited the car. He then asked Deputy Boorman for permission to go inside his aunt's home to tell his aunt he was going to jail. In response, Boorman warned Thomas that if he did not return, he would be charged with escape. Thomas did not return, but subsequently turned himself in at the sheriff's office.
Id. at 103.
In Thomas, we recognized that, on such facts, "there is no requirement of physical touching to perfect a valid arrest." In Thomas, although the officer never physically touched the defendant, the "deputy did communicate his intent to effect an arrest and had the ability to do so[,][and] Thomas understood this communication and effectively acknowledged he was under arrest." Id. at 105; see also Sweeney v. State, 633 So.2d 66, 68 (Fla. 4th DCA 1994) (implicitly finding that factor two was met because the detective "physically touched Sweeney by placing his hand on his shoulder to attempt to spin him around and place him against the wall").
We conclude that Spann's conviction for escape is supported by competent, substantial evidence, and affirm.
GROSS and TAYLOR, JJ., concur.